# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### NEWARK DIVISION

MUSTAFA MUSA AND TREY HARDY,
 on behalf of themselves and on behalf of all
others similarly situated;

                              Plaintiffs,             Case No. : 2:17-cv-05681-MCA-SCM

v.

SOS SECURITY LLC,

                              Defendant.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**MORGAN & MORGAN, P.A.**

Andrew R. Frisch, Esq.
NJ Bar No.: 3845200
600 North Pine Island Road, Suite 400
Plantation, FL 33324
Telephone (954) WORKERS
Fax: (954) 327-3013
afrisch@forthepeople.com

Marc R. Edelman, Esq.
Fla. Bar No. 0096342
201 North Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-223-5505
Fax: 813-257-0572
MEdelman@forthepeople.com
*(Pro Hac Vice Pending)*

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................1

II.  HISTORY OF THE LITIGATION .........................................................2

    A.   The Complaint ..............................................................................2

    B.   Florida Action and Mediation......................................................3

    C.   Motion to Dismiss ........................................................................4

    D.   Settlement Agreement ..................................................................4

III. THE TERMS OF THE PROPOSED SETTLEMENT............................5

    A.   The Rule 23(b)(3) Settlement Class .............................................5

    B.   The Release is Tailored to the Relief ...........................................6

    C.   Settlement Administration and Notice to the Class ......................6

        1.   Settlement Administrator.....................................................6

        2.   Notice..................................................................................6

    D.   CAFA Notice ................................................................................6

    E.   Attorneys' Fees and Service Awards ...........................................7

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD
    BE CERTIFIED FOR SETTLEMENT PURPOSES .............................7

    A.   The Proposed Settlement Class Meet Rule 23(a)'s Requirements ................. 8

        1.   Numerosity...........................................................................8

        2.   Commonality .......................................................................8

        3.   Typicality ..........................................................................10

        4.   Adequacy of Representation ..............................................10

    B.   The Proposed Settlement Class Meet Rule 23(b)(3)'s Requirements ........... 11

        1.   Common Questions of Law and Fact Predominate
          Over Individual Ones.........................................................11

        2.   A Class Action is the Superior Method for Resolving
          the Claims Here.................................................................12

V.   THE SETTLEMENT IS FAIR AND ADEQUATE.............................12

    A.   Standards for Preliminary Approval of a Class Settlement............. 12

    B.   The Terms of the Proposed Settlement are
      Fair, Reasonable and Adequate.................................................. 14

VI.  THE PROPOSED NOTICE PLAN MEETS RULE 23'S
    REQUIREMENTS.................................................................16

      A.     **The Notice Plan Satisfies Rule 23 and Due Process**.....................................16

      B.     **Request for Approval of Notice Plan**..........................................................17

**VII.**    **CONCLUSION** ...............................................................................................17

Plaintiffs, Mustafa Musa ("Musa") and Trey Hardy ("Hardy"), on behalf of themselves and on behalf of all others similarly situated (collectively, the "Plaintiffs" or "Class Representatives"), by counsel, hereby respectfully request that this Court enter an order granting preliminary approval of a proposed settlement of this class action that provides monetary relief to a settlement class consisting of approximately 23,000 employees and job applicants. Plaintiffs further seek the appointing of the undersigned as class counsel for the settlement class; the approval of the proposed notice plans for the settlement class; the appointment of a settlement administrator; and the scheduling of a hearing to consider final approval of the proposed settlement.

## I.    INTRODUCTION

This class action was filed on August 3, 2017 and alleges that Defendant, SOS Security LLC ("SOS" or "Defendant"), violated the Fair Credit Reporting Act ("FCRA") in connection with the procurement of employment background screening reports about employees and job applicants. The Plaintiffs claim that Defendant violated Section 1681b(b)(2)(A) of the FCRA by failing to: 1) disclose to each of the Plaintiffs and other of its employees, former employees, and/or prospective employees (in a document consisting solely of the disclosure) that it was going to obtain a consumer report for employment purposes prior to obtaining a copy of the actual report; and, 2) as a result, obtain the proper authorization under the FCRA to obtain those consumer reports.   More particularly, the Plaintiffs allege that the FCRA disclosure and authorization form(s) utilized by Defendant: 1) was/were not (a) stand-alone disclosure(s); and 2) contained extraneous information, more particularly "liability releases," "blanket authorizations to various entities to release information otherwise protected by state or federal laws," and "extraneous information about various state laws."

This is a claims made settlement without any reversion to Defendant. Proceeds from the Settlement Fund will be distributed *pro rata* to class members who timely submit claim forms. The settlement is an excellent result for the class. If every class members submits a claim form, the Settlement Agreement and provides an estimated minimum payment of $95.00 to those members of the class who were the subject of a consumer report that was procured by Defendant for employment purposes and who allegedly suffered an adverse employment action by Defendant. Similarly, it also provides relief in the form of an estimated minimum payment of $15.50 for class members who were the subject of a consumer report that was procured by Defendant for employment purposes but who were not the subject of adverse employment action. The settlement includes relief to class members whose claims are beyond the Fair Credit Reporting Act's ("FCRA") default 2-year statute of limitations and who, thus, could have significant difficulty bringing their own claims otherwise absent this resolution. Finally, the settlement provides for an individual settlement and service award for each of the Plaintiffs, attorneys' fees and costs, and for class notice and claims administration costs.

Overall, Plaintiffs' counsel believes that the settlement is fair, reasonable and adequate. The parties' settlement agreement is attached hereto as Exhibit 1. Plaintiffs propose appropriate forms of notice to be delivered to the class members and has attached true and correct copies of same as Exhibit 2 (a short-form Notice) and Exhibit 3 (a long-form Notice) (collectively, the "Notices"). Attached as Exhibit 4 are declarations supporting the qualifications and litigation experience of class counsel.

With the consent of Defendant, Plaintiffs now move for preliminary approval of the settlement and urges this Court to grant same and to approve the notice program contained therein.

## II.    HISTORY OF THE LITIGATION

### A.    The Complaint

This is a consumer protection class action brought under the FCRA regarding Defendant's use of consumer reports for employment purposes.  The case was brought on behalf of employees and job applicants who applied to work for Defendant and who were the subjects of employment background reports performed by a third party hired by Defendant.

The Complaint, comprised of a single count, sought class-wide relief for violations of section 1681b(b)(2) of the FCRA, pursuant to 15 U.S.C. § 1681n, which provides remedies for any willful violations of the statute, including actual, statutory and punitive damages, and attorneys' fees and costs.  More particularly, Plaintiffs alleged that Defendant violated section 1681b(b)(2) of the FCRA when it procured or caused to be procured a consumer report for employment purposes for Plaintiffs and other employees and job applicants without first providing a clear and conspicuous disclosure in writing to the applicant in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

### B.    The Florida Action

Prior to the filing of the instant action, on November 14, 2016 Hardy (a resident of Florida) filed an identical class action claim against Defendant (the "Florida Action") in the United States District Court for the Middle District of Florida (the "Florida Court").  Defendant timely filed a Motion to Dismiss Hardy's Complaint in the Florida Action.  On February 14, 2017, Hardy and Defendant attended a mediation conference in the Florida Action, conducted by mediator Rodney Max, Esq.  Prior to mediation, Defendant voluntarily provided Plaintiffs' counsel with pertinent documents and identified a class that numbered in the tens of thousands.

Although the case did not resolve at mediation, on April 4, 2017, after substantial additional negotiations between Defendant and Plaintiffs' counsel, the parties reached an agreement to resolve Hardy's class action claim against Defendant.

Shortly following the mediator's filing of his Mediation Report, the Florida Court entered its Order dismissing the Florida Action and closing the case pursuant to the Florida Court's Local Rules. Hardy and Defendant promptly filed a Joint Motion to Reopen Case so that the settlement could be approved by the Florida Court as required by Fed. R. Civ. P. 23. However, the Florida Court denied that Motion, finding that no class had yet been certified nor had a motion for class certification been filed. Subsequently, Hardy filed his Motion for Reconsideration, which was denied by the Florida Court on May 22, 2017. Shortly thereafter, Musa (a resident of New Jersey) retained Plaintiffs' counsel to, together with Hardy, file the same class action claim against Defendant in this Court, and on August 3, 2017 Plaintiffs filed the instant action.

### C.    The Motion to Dismiss

On October 9, 2017, Defendant timely filed its Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"). The parties subsequently agreed to postpone briefing the Motion in an effort to discuss settlement, including potentially on the same or similar terms preliminary agreed to following mediation of the Florida Action. Accordingly, Plaintiffs filed multiple Motions for Extension of Time to respond to the Motion, which Motions for Extension were granted by the Court. Accordingly, the Motion remains pending.

### D.    The Settlement Agreement

Shortly after the Plaintiffs' filing of this action, the parties began engaging in informal settlement discussions to resolve Plaintiffs' claims and, on November 9, 2017, reached an

agreement. The parties thereafter continued to negotiate about the finer points of their settlement and finalized their formal settlement agreement on December 18, 2017.

As demonstrated by the discovery exchanged, length of litigation of the subject claims against Defendant (which began with Hardy's filing of the Florida Action), and motion practice, there is no doubt that the settlement presented for the Court's consideration is the result of hard fought, arms-length negotiations between the parties. There is also no doubt that the settlement represents a highly beneficial result to the settlement class, satisfying the "fair, reasonable and adequate" threshold governing preliminary approval. Fed. R. Civ. P. 23(e)(2).

### III.    THE TERMS OF THE PROPOSED SETTLEMENT

The settlement was based on Defendant's representations about the substantial number of individuals in the settlement class. The settlement class consists of all of those employees and job applicants who, from August 3, 2012 to the date of the Preliminary Approval Order, were employed by or applied for a job with Defendant and for whom Defendant procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the disclosure form provided to Plaintiffs. A subset of those individuals were allegedly the subjects of adverse employment decisions based in whole or in part upon the consumer report obtained by Defendant.

### A.    The Rule 23(b)(3) Settlement Class

The settlement agreement defines a settlement class pursuant to Rule 23(b)(3), which consists of approximately 23,000 individuals, approximately 88% of whom can be identified by Defendant, which can be further subdivided into two groups or tiers based upon those employees or job applicants who were not the subject of adverse employment action (approximately 22,800 individuals, "Class 1") and those employees or job applicants who were allegedly the subject of

5

adverse employment action (approximately 200 individuals, "Class 2").

The members of Class 1, consisting of approximately 22,800 individuals, that submit a claim form will each receive a a *pro rata* payment from 95% of the Net Settlement Fund. The members of Class 2, consisting of approximately 200 individuals, that submit a claim form will each receive a *pro rata* payment from5% of the Net Settlement Fund. If any check is not submitted within 60 days of the Effective Date ("Unclaimed Funds"), the check will be deemed void and the class member will have waived his or her right to the check amount. Unclaimed Funds will become a *cy pres* award.

### B.    The Release is Tailored to the Relief

Defendant will be released from all claims relating to Plaintiffs' claims, including any and all claims under the FCRA (including, but not limited to, claims under 15 U.S.C. § 168lb(b)(2)(A) and 15 U.S.C. § 168lb(b)(3) of the FCRA) and any parallel state, local, or common law claims related to background checks or consumer reports for employment purposes. The Plaintiffs provide a general release of their claims against Defendant.

### C.    Settlement Administration and Notice to the Class

#### 1.    Settlement Administrator

The parties have hired Rust Consulting ("Rust") as the settlement administrator in this case. Rust has a deep history administering large class actions. *See* https://www.rustconsultig.com/.

#### 2.    Notice

The parties have agreed, pending the approval of this Court, that a short-form of the Notice will be sent by Rust to each of those employees and applicants using the subject employee or applicant's last known address (as reflected by Defendant's records) and a long-

6

form notice (in the Form attached) will be available to all said employees and applicants on a website created by Rust for the use of the settlement class (the information for which website will be included in the short-form of the Notice).

### D.    CAFA Notice

Pursuant to the class Action Fairness Act of 2005 ("CAFA"), Defendant will, through Rust, send via overnight delivery a notice of settlement to the appropriate federal and state officials pursuant to 28 U.S.C. § 1715(b), no later than ten days after this filing. Specifically, Defendant will send notices to the Attorney General of the United States and the Attorneys General of each state. Defendant will file with the Court a proof of service after the CAFA notice has been completed.

### F.    Attorneys' Fees and Service Awards

Plaintiffs' counsel will ask the Court to approve attorneys' fees and costs and a Class Representative service award negotiated by the parties and permitted in the settlement agreement. Both subjects – fees and service awards – were addressed in negotiations only after the parties had reached an agreement as to the recovery for the class.

More particularly, Plaintiffs' counsel will seek an individual service award for each of the Plaintiffs in the amount of $3,000, which Defendant does not oppose. This amount is consistent with other service awards approved by courts in this District.

Plaintiffs' Counsel will seek an award of fees and costs in amount not to exceed twenty-nine and one-half percent (29.5%) of the total amount of the monetary relief awarded to the settlement class. The award shall include all fees, cost and other expenses for all attorneys, their employees, consultants, and other agents who performed work in connection with this litigation. Defendant has agreed not to oppose an award up to this amount.

7

## IV.    THE PROPOSED SETTLEMENT CLASS
## SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The Parties have reached a proposed agreement on behalf of the settlement class. In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, the Class Representative would show the following.

### A.    The Proposed Settlement Class Meet Rule 23(a)'s Requirements

#### 1.    Numerosity

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of fewer than 100 members. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members met numerosity requirement); *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) (92 class members met the numerosity requirement).

Here, Defendant has represented that the settlement class consists of approximately

23,000 ascertainable individuals. These numbers are certainly sufficient to establish that joinder is impracticable.

## 2. <u>Commonality</u>

A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v.Casey,* 43 F.3d 48, 56 (3d Cir. 1994). As reiterated by the Third Circuit:

> [I] hat bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims…and, most dramatically, when some plaintiffs' claims may not have been legally viable…[.] In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is 'on whether the defendant's conduct was common as to all of the class members.

*Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

Plaintiffs assert that the following questions of law or fact, which focus on the uniform conduct and procedures of the Defendant, are common to the class:

1. Whether Defendant procured or caused to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

2. Whether Defendants acted willfully or negligently in disregard of the FCRA.

9

The theories of liability are precise because they arise from the same standard practice and present basic questions that are common to all class members. Cases presenting standardized practices directed at consumers invariably present common predominating issues. *See Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.'" (citing cases)). *See also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action).

Because the Defendant's policies and practices with respect to such conduct were essentially uniform regarding these issues, commonality is satisfied. *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d 283, 310 (3d Cir. 1998).

### 3.    <u>Typicality</u>

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims, she can reasonably be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

The Plaintiffs are each a member of the settlement class, have the same interest in resolution of the issues as all other members of the class and their claims are typical of all

members of the class. Plaintiffs were affected by the Defendant's practices in the same manner as all members of the class. These facts, and Plaintiffs' claims, are therefore typical of the facts and claims of all other members of the proposed settlement class. *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).

### 4. **Adequacy of Representation**

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiffs here fairly and adequately represent the interests of the class. They have retained qualified and experienced attorneys who have substantial experience in class action and FCRA consumer litigation and are qualified to conduct the litigation. *See, e.g., Graham v. Pyramid Healthcare Solutions*, Inc., 2017 WL 2799928, *8 (M.D.Fla. June 28, 2017)(Order designating Andrew Frisch, Marc Edelman and Ryan Morgan as class counsel in FCRA action); Exhibit 5.

Moreover, Plaintiffs have no interests that are antagonistic to the interests of the class, and are unaware of any actual or apparent conflicts of interest between herself and the class.

### B. **The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements**

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b)(3) to warrant certification, namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed settlement class meets these requirements.

### 1.    Common Questions of Law and Fact Predominate Over Individual Ones

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.

Plaintiffs allege on behalf of Class 1 and Class 2 that Defendant failed to comply with section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the disclosure form provided to Plaintiffs. The disclosure form that Defendant utilized with respect to Plaintiffs is generally common to all members of the settlement class.

In addition, Plaintiffs allege on behalf of this class that Defendant's alleged failure to comply with the FCRA was "willful," *i.e.*, that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that supports Defendant's view that it was not required to comply. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. at 69.  This is a predominant legal question common to all class members.

### 2.    A Class Action is the Superior Method for Resolving the Claims Here

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the settlement class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is a strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc*., 236 F.R.D. 387, 396 (N.D. Ill. 2006). Even if just a small fraction of the class were to bring individual suits, the resolution of common

issues in a single proceeding here would be infinitely more efficient than the separate adjudication of individual claims in separate lawsuits across the country.

## V.    THE SETTLEMENT IS FAIR AND ADEQUATE

### A.    Standards for Preliminary Approval of a Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), *available at* http://www.fjc.gov ("MANUAL"). While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed class meets the requirement imposed by the Rule." *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d at 308-09.

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. MANUAL at § 21.62.

> Such a preliminary determination requires the Court to consider the following factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citing Herbert Newberg & Alba Conte, *Newberg on class Actions* § 11.41, at 11–91 (3d ed. 1992)); *see also In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D. Del. 2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.,* 55 F.3d at 785.

*In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003).

The approval of a proposed settlement of a class action is a matter within the broad

discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*, 521 F.2d 153). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arm's length negotiations." *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious, informed, non- collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.* A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, the proposed settlement easily meets these

standards.

**B.**      **The Terms of the Proposed Settlement are Fair, Reasonable and Adequate**

The proposed settlement is reasonable when considered in light of disputed liability and the cognizable damages that members would otherwise have been permitted to recover if successful under the FCRA.  These factors demonstrate that the proposed settlement is an excellent result for the class in this case.

The proposed settlement is the product of arm's length, informed and non-collusive negotiations. Defendant has continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action. Indeed, Defendant filed a motion to dismiss, seeking full dismissal of the case. Nonetheless, Defendant has concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the settlement agreement to avoid the expense, inconvenience, and burden of further legal proceedings and the uncertainties of trial and appeals.

The Plaintiffs and their counsel have weighed the expense and length of a trial in this action against Defendant through possible appeals, which could take several more years, and have also taken into account the time already invested in this case, its uncertain outcome and the inherent risks of litigation. Plaintiffs and their counsel believe that the settlement set forth in the settlement agreement confers substantial immediate benefits upon the settlement class. Plaintiffs and their counsel have determined that the settlement is in the best interest of the settlement class.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval. Moreover, and just as important in counsel's estimation, this action and the settlement have resulted in Defendant's cessation of the allegedly unlawful practice, and essentially achieves,

albeit informally, a settlement injunction. More particularly, as a result of the proposed settlement Defendant has agreed to revise in FCRA authorization and disclosure form, together with other FRCA notice forms, which revised forms (as attached to the Settlement Agreement) Plaintiffs' counsel concurs are in compliance with the FCRA. As such, the settlement provides a broader, additional societal benefit for the class as well as for future applicants seeking employment with Defendant.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources. *General Motors*, 55 F.3d at 783. Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant action under the FCRA, are particularly well suited to class settlement.

The settlement does not improperly grant preferential treatment to the Plaintiffs or any of the described groups. The relief provided in the settlement will benefit all class members, and the distributions are made fairly based upon the strength of the claims of the class.

## VI.    **THE PROPOSED NOTICE PLAN MEETS RULE 23'S REQUIREMENTS**

Once preliminary approval of a settlement class is granted, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950). Notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class

judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) requires "individual notice to all members who can be identified through reasonable effort." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012).

### A.   The Notice Plan Satisfies Rule 23 and Due Process

Here, the Notices are written in easy and plain language and contains the information required by Rule 23(c)(2)(B). *See* Exhibits 2 and 3. The proper recipients of the Notices will be all employees and applicants during the subject time period on whom Defendant obtained a consumer report and who can be identified by Defendant (approximately 88% of the Classes). A short-form of the Notice will be sent by Rust to each of those employees and applicants using the subject employee or applicant's last known address (as reflected by Defendant's records) and a long-form notice (in the Form attached) will be available to all said employees and applicants on a website created by Rust for the use of the settlement class (the information for which website will be included in the short-form of the Notice). Accordingly, the form of notice and plan of dissemination should be approved.

### B.   Request for Approval of Notice Plan

The notice plans for the Rule 23(b)(3) settlement class described above amply satisfy the Rule 23(e)(1) requirement that notice be directed in a "reasonable manner to all class members who would be bound by the proposal."

### VII.   CONCLUSION

The settlement presents an excellent result for the class and genuine relief to approximately 22,800 employees and job applicants. Monetary relief is available for all of these individuals, and additional monetary relief is available for approximately 200 of these individuals who were

allegedly the subject of adverse employment action. The settlement eliminates further costs caused by litigating this case through trial and appeal. The proposed settlement thus satisfies the strictures for preliminary approval.

Accordingly, Plaintiffs, Mustafa Musa and Trey Hardy, respectfully move for entry of the attached proposed Order of Preliminary Approval.

Respectfully submitted,

**MORGAN & MORGAN**

**/s/ Andrew Frisch    **
Andrew Frisch, Esq.
NJ Bar No.: 3845200
Morgan & Morgan
600 North Pine Island Road, Suite 400
Plantation, FL 33324
Telephone (954) WORKERS
Fax:  (954) 327-3013
afrisch@forthepeople.com

**/s/ Marc R. Edelman    **
MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
Morgan & Morgan, P.A.
201 N. Franklin Street, #700
Tampa, FL 33602
Telephone 813-223-5505
Fax:  813-257-0572
Email: MEdelman@forthepeople.com
*(Pro Hac Vice Pending)*

*Attorneys for Plaintiffs and the class*

**CERTIFICATE OF SERVICE**

I HEREBY that on this 26th day of January, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to:

Keith J, Murphy, Esq.
kmurphy@grsm.com.com
GORDON & REES
SCULLY MANSUKAHANI

18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Counsel for the Defendant,
SOS Security LLC

Robin Taylor Symons, Esq.
rsymons@gordonrees.com
Eric R. Thompson, Esq.
ethompson@gordonrees.com
GORDON & REES
SCULLY MANSUKAHANI
100 S.E. Second Street, Suite 3900
Miami, FL 33131

Jay H. Solowsky, Esq.
jsolowsky@salawmiami.com
Mason A. Pertnoy, Esq.
mpertnoy@salawmiami.com
Solowsky & Allen, P.L.
201 South Biscayne Boulevard, Suite 915
Miami, Florida 33131

                              **MORGAN & MORGAN, P.A.**


                              **/s/ Andrew Frisch**
                              Andrew Frisch, Esq.