**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| MUSTAFA MUSA AND TREY HARDY, on behalf of themselves and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> SOS SECURITY LLC, <br><br> Defendant. | Case No. :  2:17-cv-05681-MCA-SCM |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

      For the reasons set forth in the accompanying Memorandum of Law, Plaintiffs, Mustafa Musa and Trey Hardy, on behalf of themselves and on behalf of all others similarly situated, hereby seeks final approval of the class action settlement preliminarily approved by this Court by Order dated January 26, 2018 (Dkt. No. 42).

**MORGAN & MORGAN, P.A.**

Andrew R. Frisch, Esq.
NJ Bar No.: 3845200
600 North Pine Island Road, Suite 400
Plantation, FL 33324
Telephone (954) WORKERS
Fax:  (954) 327-3013
Afrisch@forthepeople.com

Marc R. Edelman, Esq.
Fla. Bar No.: 0096342
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Fax: 813-257-0572
Medelman@forthepeople.com
*Pro Hac Vice*

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to:

Keith J. Murphy, Esq.
GORDON & REES SCULLY MANSUKAHANI
18 Colunbia Turnpike, Suite 220
Florham Park, NJ 07932
kmurphy@grsm.com

Robin Taylor Symons, Esq.
rsymons@gordonrees.com
Eric R. Thompon, Esq.
ethompson@gordonrees.com
GORDON & REES SCULLY MANSUKAHANI
100 S.E. Second Street, Suite 3900
Miami, Florida 33131


/s/ *Marc R. Edelman*
Marc R. Edelman, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| MUSTAFA MUSA AND TREY HARDY,<br> on behalf of themselves and on behalf of all<br>others similarly situated;<br><br>       Plaintiffs,<br>v.<br><br>SOS SECURITY LLC,<br><br>     Defendant. | Case No. :  2:17-cv-05681-MCA-SCM |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
<u>**OF SETTLEMENT AND CERTIFICATION OF A SETTLEMENT CLASS**</u>

**MORGAN & MORGAN, P.A.**

Andrew R. Frisch, Esq.
NJ Bar No.: 3845200
600 North Pine Island Road, Suite 400
Plantation, FL 33324
Telephone (954) WORKERS
Fax:  (954) 327-3013
<u>Afrisch@forthepeople.com</u>

Marc R. Edelman, Esq.
Fla. Bar No.: 0096342
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Fax: 813-257-0572
<u>Medelman@forthepeople.com</u>
*Pro Hac Vice*

*Attorneys for Plaintiffs and the Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... i

I.  NATURE AND HISTORY OF THE LITIGATION ................................................ 2

    A.  The Complaint .................................................................................................... 2

    B.  The Florida Action ............................................................................................. 2

    C.  The Motion to Dismiss ....................................................................................... 3

    D.  The Settlement Agreement ................................................................................. 3

II.  THE TERMS OF THE PROPOSED SETTLEMENT ........................................... 4

    A.  The Settlement Class .......................................................................................... 4

    B.  Settlement Benefits ............................................................................................ 5

    C.  Service Award for Class Representative ............................................................ 5

    D.  Attorneys' Fees Award ....................................................................................... 5

III.  ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ................. 6

    A.  The Proposed Settlement Class Meet Rule 23(a)'s Requirements ..................... 6

        1.   Numerosity .............................................................................................. 6

        2.   Commonality ........................................................................................... 7

        3.   Typicality ................................................................................................ 8

        4.   Adequacy of Representation .................................................................... 8

    B.  The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements ............... 9

        1.   Common Questions of Law and Fact Predominate Over Individual Ones ........................ 9

        2.   A Class Action is the Superior Method for Resolving These Claims .............................. 10

IV.  THE SETTLEMENT IS FAIR AND ADEQUATE ............................................. 10

    A.  The Complexity, Expense And Likely Duration Of The Litigation .................. 12

    B.  The Reaction Of The Class To The Settlement ................................................ 12

    C.  The Stage of the Proceedings and the Amount of Discovery Completed .......... 13

    D.  The Risks Of Establishing Liability ................................................................. 13

E.  The Risks Of Establishing Damages ................................................................ 14

F.  The Risks of Maintaining the Class Action Through Trial ............................... 15

G.  The Ability Of The Defendant To Withstand A Greater Judgment .................. 15

H.  The Reasonableness Of The Settlement In Light Of The Best Possible Recovery ................. 15

I.  The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation ............................................................. 17

V.  INDIVIDUAL SETTLEMENT AND SERVICE AWARD ........................................ 17

VI.  CONCLUSION ................................................................................................ 18

### TABLE OF AUTHORITIES

**CASES**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ................................ 6

*Baby Neal v.Casey,* 43 F.3d 48, 56 (3d Cir. 1994) ................................ 7

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ................................ 16

*Barel v. Bank of America,* 255 F.R.D. 393, 402-403 (E.D. Pa. 2009) ................................ 18

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ................................ 16

*Berry*, 2014 WL 4403524, at *16 ................................ 17

*Bonett v. Education Debt Svcs., Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003) ................................ 13

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974) ................................ 11

*Cavin v. Home Loan Ct., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006) ................................ 10

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011) ................................ 18

*Coles v. Stateserv Medical of Florida, LLC et al*, No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) ................................ 9

*Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) ................................ 11

*Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) ................................ 6

*Fosbrink v. Area Wide Protective, Inc.*, 8:17-cv-01154-JSM-CPT, (M.D.Fla., May 8, 2018) ................................ 9

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982) ................................ 8

*Gibbs v. Centerplate, Inc., et al.*, No.8:17-cv-2187-T-17EAK-JSS (M.D.Fla. July 12, 2018) ................................ 9

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ................................ 2, 11

*Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *2 (M.D. Fla. June 28, 2017) ................................ 9

*Grice v. Pepsi Beverages Company, et al*, Case No:1:17-cv-08853-JPO (S.D.N.Y. May 23, 2018) ................................ 9

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir.1975) ................................ 11

*Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998) ................................ 8

*Hillson v. Kelly Services Inc.,* 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017) ................................ 12, 17

*In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) .. 12

*In re Greenwich Pharmaceutical Secs. Litig.*, 1995 WL 251293 (E.D. Pa. April 26, 1995) ..................... 16

*In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) ........................................ 16

*In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, 2615, 2017 WL 354023, at *9

(D.N.J. Jan. 24, 2017) ....................................................................................................... 12, 14

*In re Prudential Insurance Company of America Sales Litigation*, 148 F.3d 283, 310-312, 317, 318 (3d

Cir. 1998) ......................................................................................................................... passim

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*,  798 F.2d 35 (2d Cir.

1986) ........................................................................................................................................ 13

*Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal.

Mar. 24, 2017)..................................................................................................................... 12, 17

*Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) .................................................... 11

*Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) ...... 12, 17

*Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982) ........................................................................................ 8

*McGee v. Cont'l Tire N. Am., Inc.,* No. CIV. 06- 6234(GEB), 2009 WL 539893, at *18 (D. N.J. Mar. 4,

2009) ........................................................................................................................................ 18

*Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) ...... 12, 17

*Musa v. SOS Security LLC*, No. 2:17-cv-05681-MCA-SCM (D.N.J, Newark Division, April 16, 2018) .... 9

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) .................................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 625 (9th Cir.

1982) ........................................................................................................................................ 11

*Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105, 118 (E.D. Pa. 2005) ........................................ 7, 18

*Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011) .................................................... 15

*Rodriguez v. National City Bank*, 726 F.3d 372, 381, 382-83 (3d Cir. 2013) .............................................. 7

*Safeco Insurance Co. of America v. Burr*, 551 U.S. at 69 (2007) ................................................................ 10

*Sapp*, 2013 WL 2130956, at *2.................................................................................................................... 18

*Saunders v. Berks Credit and Collections*, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002) ............. 15

*Stoetzner v. U.S. Steel  Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ....................... 13

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d
    Cir. 1971), *rev'd* 409 U.S. 363,366 (1973) ........................................ 16

*Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011) .................................. 7

*Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d
    Cir. 1983) ........................................................ 11

*Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) ........................ 8

*Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) ........................... 6

**STATUTES**

15 U.S.C. § 1681b(b)(2) ............................................................. 2, 4

15 U.S.C. § 1681b(b)(3) ............................................................. 5

15 U.S.C. § 1681n ................................................................ 2, 14

15 U.S.C. § 1681n(a) ............................................................... 14

15 U.S.C. § 1681o(a) ............................................................... 14

Fair Credit Reporting Act, 15 U.S.C.§§ 1681-1681x ................................... 1

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004) ...................... 10

NEWBERG ON CLASS ACTIONS at § 11.24, 5th ed. (2011) ........................ 10

**RULES**

Fed. R. Civ. P. 23(b)(3).......................................................... 4, 9

Fed. R. Civ. P. 23(e)(2) .......................................................... 4

## <u>INTRODUCTION</u>

Plaintiffs, Mustafa Musa and Trey Hardy (the "Representative Plaintiffs"), by their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Final Approval of the proposed settlement with Defendant SOS Security LLC pursuant to the terms of the Settlement Agreement submitted on January 26, 2018, and certification of a Settlement Classes defined therein (Dkt. 40). As discussed herein, the proposed settlement provides comprehensive relief for the Class and meets all of the standards for settlement approval under Rule 23(e). It should, therefore, be granted final approval as fair, reasonable and adequate as to all class members.

This Court conditionally certified a Settlement Class and preliminarily approved this settlement on April 12, 2018 (Dkt. No. 42). Pursuant to the Preliminary Approval Order, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the September 12, 2018 final approval hearing, was provided to 20,788 individuals by first class mail. *See* Declaration of Jason Stinehart of Rust Consulting Services, LLC ("Stinehart Decl."), attached hereto as Exhibit 1, ¶ II B.

The settlement represents a fair and reasonable resolution for class members for a number of different reasons.  First, in a consumer class action brought under the Fair Credit Reporting Act, 15 U.S.C.§§ 1681-1681x ("FCRA"), which is remedial in nature, the settlement finalizes significant practices changes by Defendant for the benefit of future job applicants.

Second, the settlement provides substantial economic relief to class members, in the form of payments of almost $1,400.00 to those members of the class who did not receive a timely notification of a background report's adverse effect on the prospects of their employment with Defendant. It also provides relief in the form of an estimated $120.00 cash payment for class members who were not the subject of adverse employment action, but who nevertheless had a background report about them procured in an allegedly unlawful manner. The settlement even encompasses relief to class members whose claims are beyond the FCRA's 2-year statute of limitations and who might not otherwise have a timely claim.

Third, of the over 20,000 class members, only one member requested to be excluded from the

class, and none submitted an objection to the settlement. Stinehart Decl., ¶ IV.A. This factor indicates a fair settlement.

Without question, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements. *See, e.g., In re Prudential Insurance Company of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## I.  NATURE AND HISTORY OF THE LITIGATION

### A.    The Complaint

This is a consumer protection class action brought under the FCRA regarding Defendant's use of consumer reports for employment purposes.  The case was brought on behalf of employees and job applicants who applied to work for Defendant and who were the subjects of consumer reports used for employment obtained by Defendant from a consumer reporting agency.

The Complaint, comprised of a single count, sought class-wide relief for violations of 15 U.S.C. § 1681b(b)(2) of the FCRA, pursuant to 15 U.S.C. § 1681n, which provides remedies for any willful violations of the statute, including actual, statutory and punitive damages, and attorneys' fees and costs. More particularly, Plaintiffs alleged that Defendant violated 15 U.S.C. § 1681b(b)(2) of the FCRA when it procured or caused to be procured a consumer report for employment purposes for Plaintiffs and other employees and job applicants without first providing a clear and conspicuous disclosure in writing to the applicant in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

### B.    The Florida Action

On November 14, 2016 Hardy (a resident of Florida) filed a nearly identical class action claim against Defendant (the "Florida Action") in the United States District Court for the Middle District of Florida (the "Florida Court").  Defendant timely filed a Motion to Dismiss Hardy's Complaint in the Florida Action, to which Plaintiff prepared to respond.  On February 14, 2017, Hardy and Defendant

attended a mediation conference in the Florida Action, conducted by mediator Rodney Max, Esq.  Prior to mediation, Defendant voluntarily provided Plaintiffs' counsel with pertinent documents and identified a class that numbered in the tens of thousands.  Although the case did not resolve at mediation, on April 4, 2017, after substantial additional negotiations between Defendant and Plaintiffs' counsel, with Mr. Max serving as the intermediary, the parties reached an agreement in principal to resolve Hardy's class action claim against Defendant.

Shortly following the mediator's filing of his Mediation Report, the Florida Court entered its Order dismissing the Florida Action and closing the case pursuant to the Florida Court's Local Rules. Hardy and Defendant promptly filed a Joint Motion to Reopen Case so that the settlement could be approved by the Florida Court as required by Fed. R. Civ. P. 23.  The Florida Court denied that Motion, finding that no class had yet been certified nor had a motion for class certification been filed. Subsequently, Hardy filed his Motion for Reconsideration, which was denied by the Florida Court on May 22, 2017.  Shortly thereafter, Musa (a Georgia resident), together with Hardy, filed this class action claim against Defendant on August 3, 2017.

### C.      The Motion to Dismiss

On October 9, 2017, Defendant timely filed its Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"). The parties subsequently agreed to postpone briefing the Motion in an effort to discuss settlement, including potentially on the same or similar terms preliminarily agreed to following mediation and extended settlement negotiations of the Florida Action.  Accordingly, Plaintiffs filed multiple Motions for Extension of Time to respond to the Motion, which Motions for Extension were granted by the Court.  Accordingly, the Motion remained pending while the parties continued negotiating.

### D.      The Settlement Agreement

Shortly after the Plaintiffs' filing of this action, the parties began engaging in informal settlement discussions to resolve Plaintiffs' claims and, on November 9, 2017, reached an agreement. The parties thereafter continued to negotiate about the finer points of their settlement and finalized their formal

settlement agreement in December 18, 2017.

As demonstrated by the discovery exchanged, length of litigation of the subject claims against Defendant (which began with Hardy's filing of the Florida Action in November, 2016), and motion practice, there is no doubt that the settlement presented for the Court's consideration is the result of hard fought, arms-length negotiations between the parties. There is also no doubt that the settlement represents a highly beneficial result to the settlement class, satisfying the "fair, reasonable and adequate" threshold governing preliminary approval. Fed. R. Civ. P. 23(e)(2).

## II.   THE TERMS OF THE PROPOSED SETTLEMENT

The essential terms of the settlement preliminarily approved by this Court are set out in the Settlement Agreement attached to the Motion for Preliminary Approval. (Dkt. 40-1). The settlement is fair, adequate and reasonable in light of the relevant facts, the applicable law, and the value of the settlement, economic as well as non-economic, to the Class.

### A.   The Settlement Class

The settlement agreement defines a settlement class pursuant to Fed. R. Civ. P. 23(b)(3), which consists of approximately 23,000 individuals, approximately 88% of whom were identified by Defendant, which was further subdivided into two groups or tiers based upon those employees or job applicants who were not the subject of adverse employment action (approximately 22,800 individuals, "Class 1") and those employees or job applicants who were allegedly the subject of adverse employment action (approximately 200 individuals, "Class 2").

The members of Class 1 consisted of approximately 22,800 job applicants who Plaintiffs have alleged did not receive a stand alone disclosure form in violation of the FCRA, 15 U.S.C. § 1681b(b)(2). Class 1 members that submitted a claim form will each receive a a *pro rata* payment from 95% of the Net Settlement Fund. The members of Class 2 consisted of approximately 200 individuals who Plaintiffs have alleged were not provided pre-adverse action notice before being subject to an adverse employment action in violation of the FCRA, 15 U.S.C. § 1681b(b)(3). Class members that submitted a claim form will each

receive a *pro rata* payment from 5% of the Net Settlement Fund. If any check is not submitted within 60 days of the Effective Date ("Unclaimed Funds"), the check will be deemed void and the class member will have waived his or her right to the check amount. Unclaimed Funds will become a *cy pres* award.

### B.  Settlement Benefits

At the end of extended claims period, 3,061 Class 1 members submitted claims.  If the Court grants final approval of the settlement and approves Class Counsel's fee petition, each of the 3,061 Class 1 members that submitted claims forms will receive approximately $120, free and clear of any further reduction for attorneys' fees or administration costs. Additionally, the thirteen (13) Class 2 members that submitted claims forms will receive approximately $1,384, also free and clear of any further reduction for attorneys' fees or administration costs.  The Defendant has paid for all costs associated with notice and settlement administration, as set forth in the Settlement Agreement.  The costs borne by Defendant, initially estimated to be $58,844, have exceeded the initial estimates and have been capped by the Settlement Administrator at $65,000.

### C.  Service Award for Class Representative

Subject to the Court's approval, the parties have agreed that the representative Plaintiffs, Trey Hardy and Mustafa Musa, will be paid an individual settlement and service award of $3,000.00 each by the Defendant for their individual claims and for their services in connection with representing the Class. *See* Section V., *infra.*

### D.  Attorneys' Fees Award

Plaintiff's counsel has filed a motion seeking approval for payment of attorneys' fees and costs as negotiated by the parties and permitted in the settlement agreement. Plaintiff's Counsel seeks an award of combined fees and costs in amount of $162,250, which represents 26.8% of the total economic value of the settlement. The amount of attorneys' fees and expenses to be paid to Class Counsel was not agreed to by the parties until well after agreement was reached on the other terms of the Settlement Agreement.

### III.   ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

When the Court preliminarily approved this settlement, it considered whether the settlement class could be conditionally certified for settlement purposes. *See, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). As final approval of the settlement also involves the determination that certification of the Settlement Class is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, Plaintiffs assert the following:

### A.   The Proposed Settlement Class Meet Rule 23(a)'s Requirements

#### 1.   Numerosity

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of fewer than 100 members. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members met numerosity requirement); *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members met the numerosity requirement).

Plaintiff asserts that the members of the Settlement Class are so numerous that joinder of all members is impracticable. According to the records produced by Defendant to the Settlement Administrator, and following an address updating procedure, including the removal of duplicate records, it appears that the Settlement Class consists of 20,788 members.  *Stinehart Decl*. at ¶ II,B.

### 2.      Commonality

A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v.Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  As reiterated by the Third Circuit:

> That bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims…and, most dramatically, when some plaintiffs' claims may not have been legally viable…[.] In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is 'on whether the defendant's conduct was common as to all of the class members.'

*Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality."), *Rodriguez*, 726 F.3d at 381, n. 2.

Plaintiffs assert that the following questions of law or fact, which focus on the uniform conduct and procedures of the Defendant, are common to the class:

1.      Whether Defendant procured or caused to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

2.      Whether Defendant provided pre-adverse action notice before taking adverse employment action based in whole, or in part, based on a consumer report.

3.      Whether Defendant acted willfully or negligently in disregard of the FCRA.

The theories of liability are precise because they arise from the same standard practice and present basic questions that are common to all class members. Cases presenting standardized practices directed at consumers invariably present common predominating issues. *See Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the

proposed class by mailing to them allegedly illegal form letters or documents.'" (citing cases)); *see also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action).

Because the Defendant's policies and practices with respect to such conduct were essentially uniform regarding these issues, commonality is satisfied. *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d 283, 310 (3d Cir. 1998).

### 3.      Typicality

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims, they can reasonably be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

The Plaintiffs are each a member of the settlement class, have the same interest in resolution of the issues as all other members of the class and their claims are typical of all members of the class. Plaintiffs were affected by the Defendant's practices in the same manner as all members of the class. These facts, and Plaintiffs' claims, are therefore typical of the facts and claims of all other members of the proposed settlement class.  *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).

### 4.      Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiffs here fairly and adequately represent the interests of the class. Moreover, they have no interests antagonistic to the class, and are unaware of any actual or apparent conflict between themselves and the class.  They have retained qualified and experienced attorneys who have substantial experience in class action and FCRA consumer litigation and are qualified to conduct the litigation. *See, e.g.*, *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *2 (M.D. Fla. June 28, 2017)(Moody, J.); *Coles v. Stateserv Medical of Florida, LLC et al*, No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) (D.E. 45); *Fosbrink v. Area Wide Protective, Inc*., 8:17-cv-01154-JSM-CPT, (M.D.Fla., May 8, 2018)(Moody, J.) (D.E. 58); *Musa v. SOS Security LLC*, No. 2:17-cv-05681-MCA-SCM (D.N.J, Newark Division, April 16, 2018) (D.E. 42); *Grice v. Pepsi Beverages Company, et al*, Case No:1:17-cv-08853-JPO (S.D.N.Y. May 23, 2018); *Gibbs v. Centerplate, Inc., et al*., No.8:17-cv-2187-T-17EAK-JSS (M.D.Fla. July 12, 2018).

**B.**     **The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements**

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b)(3) to warrant certification, namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed settlement class meets these requirements.

**1.**     **Common Questions of Law and Fact Predominate Over Individual Ones**

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.

Plaintiffs allege on behalf of Class 1 and Class 2 that Defendant failed to comply with section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the disclosure form provided to Plaintiffs.  The disclosure form that Defendant utilized with respect to Plaintiffs is generally common to all members of the settlement class.

9

In addition, Plaintiffs allege on behalf of this class that Defendant's alleged failure to comply with the FCRA was "willful," *i.e.*, that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that supports Defendant's view that it was not required to comply. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. at 69 (2007). This is a predominant legal question common to all class members.

### 2. A Class Action is the Superior Method for Resolving These Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the settlement class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is a strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc*., 236 F.R.D. 387, 396 (N.D. Ill. 2006). Even if just a small fraction of the class were to bring individual suits, the resolution of common issues in a single proceeding here would be infinitely more efficient than the separate adjudication of individual claims in separate lawsuits across the country.

### IV. THE SETTLEMENT IS FAIR AND ADEQUATE

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. NEWBERG ON CLASS ACTIONS at § 11.24, 5th ed. (2011). Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval hearing. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf. The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

> discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *Prudential*, 148 F.3d at 317.

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir.1975). A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution. Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believe that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute. An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved, and is in fact an excellent outcome for the Settlement Class. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30 per class member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).
>
> *Hillson v. Kelly Services Inc.,* 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017).

### A.    The Complexity, Expense And Likely Duration Of The Litigation

Without settlement, the parties would have to proceed with further discovery, a motion for class certification, summary judgment proceedings and, ultimately, perhaps to trial.  While the Representative Plaintiffs believe they would prevail on all issues, there is at least some risk they would not. Even if Plaintiffs were to prevail on class certification and then successfully defeat Defendant's motion to dismiss and expected motion for summary judgment, a lengthy and expensive trial would most likely ensue. Trial preparation on both sides would be necessary and a jury trial would eventually be before the Court. It would be unrealistic not to expect appeals from any result reached. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### B.    The Reaction Of The Class To The Settlement

Notice has been directly mailed to members of the Settlement Class advising them of the terms of the settlement and their right to exclude themselves from the Class. The deadline for Class members to exclude themselves and to object was July 2, 2018. To provide additional time for Claim Forms that were returned as undeliverable shortly prior to the July 2, 2018 deadline, the parties agreed to extend that deadline to July 31, 2018.  As of that date, the Settlement Administrator received one exclusion request. Stinehart Decl. at ¶ IV.A. No objections were received. One exclusion request out of more than 20,000 class members  is convincing evidence of the proposed settlement's fairness and adequacy.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

### C.     The Stage of the Proceedings and the Amount of Discovery Completed

The settlement in this matter occurred only after the parties were able to assess the relative strengths and weaknesses of their claims and defenses, and through the exchange and review of substantial document production in the Florida Action. The parties then conducted extensive arms-length negotiations, continuing the negotiations that began in the Florida Action with a well-respected private mediator, Rodney Max, Esq. Based on the information obtained and developing case law, "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Bonett v. Education Debt Svcs., Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003) (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*,  798 F.2d 35 (2d Cir. 1986)).

### D.     The Risks Of Establishing Liability

The risk of establishing liability is another important factor warranting final approval of the settlement. To prevail at trial, Plaintiffs would need to succeed on their claims that the Defendant's actions willfully violated the FCRA.  Defendant denies committing any wrongful acts or violations of law or that it has any liability to the Plaintiffs or the Settlement Class.

While Plaintiffs strongly believe that the Defendant's activity violated the law as set forth in their Complaint, they also recognize the risk that the Court or a jury might not make that finding. Although

Plaintiffs were prepared to take on these burdens and make substantial arguments opposing Defendant's positions, the risks faced were not insignificant. *See, e..g In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, 2017 WL 354023, at *9 (D.N.J. Jan. 24, 2017) (dismissing nearly identical FCRA claims).

### E.   The Risks Of Establishing Damages

Even if Plaintiffs were to overcome the liability obstacles, there are also risks in obtaining statutory damages, which Plaintiffs have avoided by virtue of the proposed settlement. The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions. In this case, Plaintiffs and the members of the Settlement Class were seeking statutory damages under the FCRA in the range of $100 to $1,000 per class member, as well as punitive damages. 15 U.S.C. § 1681n.

The settlement agreement provides a substantial monetary benefit to every Settlement Class member who submitted a claim form. Even if Defendant was to be found liable for willful conduct, and Plaintiffs and the Class were awarded statutory damages, that award amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent. 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a).

Additionally, as a result of the proposed settlement Defendant has agreed to revise its FCRA authorization and disclosure form, together with other FRCA notice forms, which revised forms (as attached to the Settlement Agreement) Plaintiffs' counsel concurs are in compliance with the FCRA. As such, the settlement provides a broader, additional societal benefit for the class as well as for future applicants seeking employment with Defendant. As a result of Defendant's revision of those forms, Plaintiffs and Defendant request that, in the event that the Court grants the instant Motion, certifying the class and approving the parties' settlement, the Court's Order include a finding that Defendant's current FCRA Notice and Authorization forms, as well as its current pre-adverse action and adverse action letters

(attached as Exhibit D to the Settlement Agreement), are compliant with the FCRA.

Thus, this settlement avoids the litigation risk to the Settlement Class and secures tangible and useful relief that may not be obtainable after trial. The risk of no damages, or a lower damages award at trial, as well as limitations on the Court's ability to award injunctive relief under the FCRA, supports final approval of the Settlement Agreement.

### F.      The Risks of Maintaining the Class Action Through Trial

The settlement here comes before Plaintiffs have moved for class certification. Defendant would be expected to vigorously oppose certification, and even if class certification were granted, it would not be surprising if Defendant pursued an interlocutory appeal under Rule 23(f), which at worst could result in an adverse appellate ruling and, at best, result in lengthy delay.

Alternatively, even if the case were certified, it is likely that Defendant would seek decertification, either before trial, during trial or on appeal. *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, at \*12 (E.D. Pa. July 11, 2002). While the success of such attempts is uncertain at best, the settlement allows Plaintiffs to avoid the delay and expense that would be associated with such proceedings.

### G.      The Ability Of The Defendant To Withstand A Greater Judgment

The ability of a defendant to withstand a greater judgment is a particularly relevant consideration "where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011).  Here, this factor is neutral.

### H.      The Reasonableness Of The Settlement In Light Of The Best Possible Recovery

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial. Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of

post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. Thus, a settlement is advantageous to all concerned. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363,366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiffs are confident of their ability to prevail at trial, no final adjudication has been made as to the validity of their claims. Plaintiffs also recognize that Defendant has continued to deny all liability and allegations of wrongdoing and that Plaintiffs' claims would be threatened with dismissal in connection with dispositive motions which would be expected to be filed and briefed (including Defendant's pending Motion to Dismiss). In *In re Greenwich Pharmaceutical Secs. Litig.*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million:

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages. When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

*Id.* at *5. *See also, In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of settlement that provided 5.2% of best possible recovery).

Through the proposed settlement, Plaintiffs have obtained a very reasonable benefit for the Settlement Class under the FCRA. Moreover, through the practice changes that the lawsuit triggered, Plaintiffs have achieved what essentially acts as a settlement injunction requiring Defendant to improve its practices in the future. This settlement allows Plaintiffs to avoid the risks described above and ensures an immediate benefit to the Settlement Class. The monetary compensation available under the Settlement Agreement is entirely in line with comparable settlements under the FCRA.

Plaintiffs believe the proposed settlement is well within the range of reasonableness and should be approved. *See Hillson v. Kelly Services, Inc.* 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017)($30); *Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1)(per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9)(citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

## I.     The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation

Essentially, this factor is the same as the analysis above. When the risks of liability and damages are considered in light of the total potential recovery, this settlement is an excellent result for the Settlement Class.

## V.     INDIVIDUAL SETTLEMENT AND SERVICE AWARD

Class Counsel also seeks this Court's approval of a three thousand dollar ($3,000.00) individual settlement and service award for each of Representative Plaintiffs Mustafa Musa and Trey Hardy for their willingness to undertake the risks of this litigation and shoulder the burden of such litigation. In this case, there would be no benefit to Class members if the Representative Plaintiffs had not stepped forward. Mr. Musa and Mr. Hardy devoted significant time and energy to the litigation, including reviewing documents, assisting with compiling responses to written discovery requests and consulting with counsel as necessary. They have totally fulfilled their obligations as class representatives. Class Counsel therefore request that the Mr. Musa and Mr. Hardy be approved for the award described above and as set forth in the Settlement Agreement. The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that the Representative Plaintiffs achieved for the Settlement Classes. Class members were notified that Class Counsel would request an award for the Representative Plaintiffs in this amount and no Class member objected to that proposed award.

This award is well within the range of awards made in similar cases. *Berry*, 2014 WL 4403524, at *16 (awarding $5,000 to each of several class representatives); *McGee v. Cont'l Tire N. Am., Inc.,* No. CIV. 06- 6234(GEB), 2009 WL 539893, at *18 (D. N.J. Mar. 4, 2009) ($3,500); *Barel v. Bank of America,* 255 F.R.D. 393, 402-403 (E.D. Pa. 2009) ($10,000); *Perry v. Fleet Boston Financial Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (awarding $5,000, and citing cases).  Accordingly, the award requested for the Representative Plaintiffs should be approved.

## VI.   <u>CONCLUSION</u>

As concluded by Judge Brody in approving a settlement of FCRA claims in the *Chakejian* case, "this settlement is fair, adequate, and reasonable. Such a finding is further bolstered by previous court decisions approving similar settlements whose terms were somewhat less favorable than these." *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011) (citations omitted). *See also Sapp*, 2013 WL 2130956, at *2 ("There is no question but that the settlement was a result of hard-fought, arm's-length negotiation…. In sum, the settlement is unquestionably fair, adequate and reasonable").

The Representative Plaintiffs request final approval of the proposed settlement herein for the same reasons.

**MORGAN & MORGAN, P.A.**

**/s/ _Andrew R. Frisch_**
Andrew R. Frisch, Esq.
NJ Bar No.: 3845200
600 North Pine Island Road, Suite 400
Plantation, FL 33324
Telephone (954) WORKERS
Fax:  (954) 327-3013
Afrisch@forthepeople.com

Marc R. Edelman, Esq.
Fla. Bar No.: 0096342
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Fax: 813-257-0572
Medelman@forthepeople.com
*Pro Hac Vice*
*Attorneys for Plaintiffs and the Class*